# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JESSICA GONZALEZ,<br><br>                Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT,<br><br>                Defendant. | Case No. 2:09-cv-00381-JCM-PAL<br><br>**ORDER**<br><br>(Mot. Rebut. Presumpt. - Dkt. #71) |

The court held a hearing on March 27, 2012, on Plaintiff's Motion for a Rebuttable Presumption that the Video Surveillance of the Plaintiff's Booking into CCDC was Adverse to the Defendant, or, in the Alternative, for a Permissive Adverse Inference of the Same (Dkt. #71). Charles Rainey appeared on behalf of the Plaintiff Jessica Gonzalez, and Craig Anderson appeared on behalf of the Defendant Las Vegas Metropolitan Police Department ("Defendant" or "LVMPD"). The motion was referred to the undersigned for decision by the district judge pursuant to 18 U.S.C. § 636(b)(1)(A), and LR IB 1-3. The court has considered the Motion, Defendant's Response (Dkt. #77), Plaintiff's Reply (Dkt. #82), Plaintiff's Supplement (Dkt. #85), and the arguments of counsel made at the hearing.

## **BACKGROUND**

**I.      The Complaint and Procedural History.**

The Complaint (Dkt. #1) in this case was filed February 26, 2009, and arises out of Plaintiff's arrest by LVMPD officers on April 25, 2008. Plaintiff was pulled over in a traffic stop at approximately 6:45 a.m. by LVMPD Officer Russell Cragin. Complaint (Dkt. #1) at ¶¶17, 19. Officer Cragin examined Plaintiff's driver's licence and social security card and arrested her on an outstanding bench warrant issued by the Las Vegas Justice Court. *Id.* at ¶¶20-22. The warrant did not apply to the Plaintiff, but to a person with the same name. *Id.* at ¶23. Plaintiff was taken to a nearby police

station and turned over to the custody of Officer Hunn. *Id*. at ¶¶30, 32.  Officer Hunn acknowledged that Plaintiff was probably not the suspect wanted by the warrant and reassured Plaintiff the matter would be resolved during the booking process at the Clark County Detention Center ("CCDC"). *Id.* at ¶¶32,33.

Plaintiff was booked and held in custody at CCDC overnight. *Id*. at ¶45.  She was subjected to a full strip search. *Id*. at ¶46.  She was released on bail but held for an additional three hours without any explanation for the delay. *Id*. at ¶48.  After her release, she was forced to retain counsel and defend herself on the charge stated in the warrant. *Id*. at ¶¶50, 52.  The charge was ultimately dismissed because Plaintiff was not the person wanted by the warrant. *Id*. at ¶52.  As a result of her unlawful arrest and detention, Plaintiff lost her position, suffers severe panic attacks, and has been diagnosed with stress-related ulcers. *Id*. at ¶¶53-55.

Her Complaint asserts claims for violation of her civil rights under 42 U.S.C. §§ 1983 and 1985, violation of her fundamental human rights under Article 9 of the Universal Declaration of Human Rights, and asserts claims under Nevada state law for false imprisonment, negligence, intentional infliction of emotional distress, and battery.  She seeks general and special damages in excess of $10,000.00, compensatory damages, punitive damages, prejudgment and post-judgment interest, attorney's fees and costs, and injunctive relief requiring the Defendants to create and implement procedures for the proper identification of suspects taken into custody pursuant to bench warrants or other government-issued arrest warrants.

On January 27, 2010, the district judge entered an Order (Dkt. #38) granting in part and denying in part Defendants' Motion for Summary Judgment (Dkt. #24).  The order dismissed Plaintiff's fourth claim for violation of her fundamental human rights, fifth claim for false imprisonment with respect to Officer Cragin, and sixth claim for negligence.  The court also found that Plaintiff had withdrawn her first claim for violation of civil rights under 42 U.S.C. § 1981 and her third claim for violation of civil rights pursuant to 42. U.S.C. § 1985, and the court dismissed these claims.  The motion was denied in all other respects.  Defendants appealed the district judge's denial of summary judgment to Officer Cragin on qualified immunity grounds.  The Court of Appeals did not reach the question of whether the facts alleged by the Plaintiff in the Complaint state a violation of a constitutional right, concluding that

the right at issue was not clearly established at the time of the Plaintiff's arrest. Although the warrant listed a different social security number than Gonzalez provided to Officer Cragin, the warrant's description was an exact match with Gonzalez's name, date of birth, hair color, eye color, and height. The Ninth Circuit held that under the prevailing law at the time of Gonzalez's arrest, a reasonable officer in Cragin's position would have no reason to believe that arresting Gonzalez would violate her constitutional rights. The Ninth Circuit therefore reversed with instructions to grant Officer Cragin's Motion for Summary Judgment on the defense of qualified immunity.

## II. The Parties' Positions.

### A. Plaintiff's Motion.

In the current motion, Plaintiff seeks sanctions in the form of a rebuttable presumption, or in the alternative, for a permissive adverse inference instruction against the Defendant for destruction of video surveillance related to this case. Counsel for Plaintiff states that on August 21, 2008, he notified LVMPD Sheriff Gillispie, in writing, of the details of the civil rights violations committed against the Plaintiff. He provided a courtesy copy of the Complaint to Sheriff Gillespie and also mailed it to general counsel for LVMPD on August 21, 2008. The letter to general counsel, attached as Exhibit "1" to the Motion, requested that Defendant preserve evidence related to this matter, including electronic evidence such as emails, computerized records, and other computer files. Counsel for Defendant responded in a letter dated September 9, 2008, acknowledging receipt of the letter and Complaint, and confirming that he had reviewed the letter, proposed Complaint, and relevant documents. Thus, Defendant received timely and actual notice of the necessity to preserve relevant evidence for this litigation.

Plaintiff understands that LVMPD has a video surveillance system installed throughout CCDC, including the booking area, which routinely records persons being booked and processed into CCDC. Plaintiff is confident that the video of her booking on April 25, 2008, would reveal that the Defendant was fully aware that they had taken the wrong individual into custody, and incarcerated her nevertheless. She is confident the video of her booking will establish Defendant's awareness that the wrong person was incarcerated "based, in part, on the oral statements, physical gestures and ancillary communications conveyed by CCDC staff at the time of the Plaintiff's booking and intake into CCDC."

On July 28, 2009, Plaintiff served a request for production of documents requesting any surveillance video in Defendant's possession depicting Plaintiff and any of the Defendants. Defendant responded September 9, 2009, that pursuant to LVMPD policy and procedure, CCDC recordings are only kept for one year unless special circumstances exist. Plaintiff claims that the Defendant failed to follow their own policies and procedures regarding the preservation of videotape evidence and failed to preserve the videotape evidence despite receiving notice of this litigation.

Under these circumstances, Plaintiff argues that the court should sanction Defendant for destruction of evidence. Among the sanctions the court has authority to order is an instruction to the jury that the jury may draw an adverse inference against the party or witness responsible for destroying the evidence. Additionally, Plaintiff argues that NRS 47.250(3) imposes a rebuttable presumption that any evidence wilfully destroyed is adverse to the party that destroyed it. Citing *Bass-Davis v. Davis*, 143 P.3d 103, 105 (Nev. 2006), Plaintiff acknowledges that the Nevada Supreme Court defined "willful" to require a showing of intent to destroy evidence and an intent to harm another party by doing so. The Nevada Supreme Court has recognized that an adverse presumption rectifies the evidentiary imbalance caused by a party's inability to produce relevant evidence and imposes a pre-litigation duty to preserve evidence once a party is on notice of a potential legal claim.

Plaintiff contends that the Defendant wilfully destroyed the video after receiving actual notice of this litigation and a demand from Plaintiff's counsel that all electronic evidence be preserved. Based on Defendant's discovery responses, Plaintiff understands that the surveillance footage was erased two months after this lawsuit was filed. Thus, Defendant acted deliberately, intending to destroy evidence unfavorable to its case. Plaintiff argues "it is impossible to believe that the destruction of this video footage was unintentional." She also believes that if the video had been preserved, it would have provided "smoking gun" evidence favorable to her case. Therefore, pursuant to NRS 47.250(3), the court should apply a rebuttable presumption and instruct the jury that the destroyed video surveillance, had it been produced, would have shown that CCDC staff was aware that Plaintiff was not the suspect wanted by the warrant, and CCDC staff continued the booking process with this knowledge. If the court finds a presumption instruction is not warranted, Plaintiff asks, in the alternative, that the court
///

give a permissible inference instruction to the jury that the missing evidence would have been adverse to Defendant.

### B.     Defendant's Response.

Defendant opposes the motion, arguing it is based on an unsupported hunch that CCDC has a video surveillance system that generates a record of each person booked and processed at CCDC. Counsel for Defendant claims that Plaintiff conducted no discovery concerning CCDC's surveillance cameras, or whether an arrestee's booking is captured on video. In October 2009, LVMPD produced Lieutenant Gary Driscoll–the lieutenant in charge of CCDC's central booking at the time of Plaintiff's arrest who has worked in corrections for fifteen years–for deposition as its Rule 30(b)(6) designee concerning CCDC's booking policies and procedures. He was prepared to answer all questions regarding CCDC's surveillance system in the booking area. However, counsel for Plaintiff never asked Lieutenant Driscoll any question about CCDC's video surveillance. Had Plaintiff's counsel done so, he would have learned that CCDC does not record the actual booking process, and no cameras focus on the area where inmates are processed on a Personal Identification Device ("P.I.D.").

Defendant claims the P.I.D. device does not play an important role in the actual identification of arrestees and is only used as a preliminary identification tool. It tells CCDC staff whether an arrestee has been in CCDC before, but it does not indicate whether the arrestee has outstanding wants or warrants. Because the P.I.D.'s results are so insignificant, they are not saved, and the machine is operated by a civilian instead of a trained, commissioned corrections officer. According to Defendant, corrections officers verify the arrestee's personal information during the open booking procedure by "live-scanning" fingerprinting. The arrestee's finger prints are submitted to the Automated Fingerprint Information System ("AFIS") and submitted to LVMPD Fingerprint Bureau for examination. They are compared to local and national fingerprint databases. This method is more thorough and accurate but also more time consuming than the P.I.D. system. Fingerprint comparison can take more than twenty-four hours, and according to Defendant, arrestees are advised that even if they post bail, it is likely they will remain in CCDC for twelve to twenty-four hours to complete the entire booking process.

Defendant concedes that Plaintiff's initial P.I.D. preliminary fingerprint search did not match the information of the Jessica Gonzalez wanted in the warrant. Pursuant to its policy, CCDC officers

performed a "live scan" of Plaintiff's fingerprints and submitted them to the Fingerprint Bureau at about 3:30 p.m. on April 25, 2008. Plaintiff's fingerprints were compared with those in the AFIS database, and on April 26, 2008, the Fingerprint Bureau confirmed that Plaintiff's fingerprints did not match the wanted individual's fingerprints. This information was related to both CCDC and LVMPD's records department. Defendant asserts that even if Plaintiff had not posted bail, she would have been released at this time.

Defendant's Opposition is supported by the declaration of Lieutenant Rick Hamilton. Lieutenant Hamilton avers that in 2008, when Plaintiff was arrested, CCDC's surveillance system in the booking area consisted of fixed cameras that recorded to a single VHS tape. See Hamilton Declaration, attached to Defendant's Opposition as Exhibit "C" ¶3. The surveillance system was not designed to capture and record an arrestee's booking process, and it would not capture the actual P.I.D. process or any conversations. The detail and quality of the recording was so poor, it was almost impossible to identify officers, and it did not capture facial expressions or subtle gestures.

Defendant claims that Plaintiff's August 21, 2008, letter made vague requests to preserve evidence. After receiving the letter, Defendant immediately pulled all computerized evidence related to this request, including: (1) LVMPD's declaration of arrest; (2) CCDC's bench warrant; (3) NCJIS warrant records; and (4) all documents generated by CCDC. Defendant provided these records to Plaintiff in its initial disclosure statement. Plaintiff did not request surveillance video until she propounded requests for production of documents on July 28, 2009. Defendant responded to Plaintiff's request for production by stating that CCDC kept its video footage for one year "unless special circumstances exist." Plaintiff did not pursue this issue until filing the instant motion.

Defendant argues that the legal issue is whether Plaintiff is entitled to a rebuttable presumption that LVMPD wilfully destroyed video surveillance evidence when such tapes were erased pursuant to LVMPD's standard operating policies, and there was no showing that the tapes contained any relevant evidence. Plaintiff failed to conduct any discovery regarding CCDC's video surveillance system, and Plaintiff's Motion is based on opinions without any foundation or support. Plaintiff does not allege that corrections officers physically mishandled her or physically abused her. Rather, she claims the video surveillance cameras should have captured facial expressions and gestures. However, Defendant

represents that the poor quality of the video would not have yielded any evidence dispositive of her claims. Thus, Plaintiff has not presented any admissible evidence suggesting that LVMPD could have reasonably foreseen it needed to preserve the videotape. According to the affidavit of Lieutenant Hamilton, even if LVMPD had preserved the CCDC video, it would only have shown Plaintiff sitting in the booking room. It would not have captured the events that happened at the P.I.D. machines or during booking. Thus, the court should deny the Plaintiff's motion.

### C. Plaintiff's Reply and Supplement.

Plaintiff replies that the Defendant was on notice of this litigation long before the video surveillance tape was destroyed, and it had a duty to preserve the tape. Plaintiff claims that the video surveillance tape was destroyed in violation of Defendant's standard operating policy. Specifically, the policy required tapes be kept for one year unless special circumstances exist. Defendant was aware of Plaintiff's Complaint before the tape was destroyed, and Defendant's actual notice of this lawsuit constituted a special circumstance giving rise to a duty to preserve under Defendant's policies. Plaintiff filed a Supplement (Dkt. #85) the day before the hearing which attached a copy of her booking photograph. Defendant produced this photograph early in the discovery process. It is dated August 27, 2008, and there is a stamped and hand-written note which reads: "Rel. to Risk Mgt. for legal." This indicates that as of August 27, 2008, Defendant was aware its records were relevant for legal purposes. Thus, Defendant should not be permitted to argue that it had no notice the video surveillance footage was potentially relevant.

## DISCUSSION

**I.    Spoliation**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Svs.,* 314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)) (a party engages in spoliation "as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed"); 7-37A *Moore's Federal Practice - Civil* § 37A.55 (2012). A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant

evidence. *Id*; *see also United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002); *In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (citing *Nat'l Ass'n of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *In re Napster,* 462 F.Supp.2d at 1067 (duty to preserve begins when a party should have known that the evidence may be relevant to future litigation).

A trial court has broad discretion in determining a proper sanction for spoliation, including outright dismissal of the lawsuit. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). Additionally, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also Yeti By Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105 (9th Cir. 2001). This power includes the power to sanction a responsible party by instructing the jury that it may infer that the spoiled or destroyed evidence would have been unfavorable to the responsible party. *Id*.; *Akiona*, 938 F.2d at 161. The district court's exercise of this discretionary power is reviewed by the Ninth Circuit for abuse of discretion. *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.* 982 F.2d 363, 367 (9th Cir. 1992).

To be actionable, the spoliation of evidence must damage the right of a party to bring an action. *Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999) (citing *Unigard*, 982 F.2d at 371). In examining a spoliation claim, the court determines whether the destruction or failure to preserve evidence results in prejudice to the opposing party. The court's prejudice determination examines whether the spoiling party's action impairs the non-spoiling party's ability to go to trial or threatens to interfere with the rightful decision of the case. *Leon v. IDX Systems Corp.,* 464 F.3d 951, 959 (9th Cir. 2006). In *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, the Ninth Circuit found prejudice when a party's refusal to provide certain documents "forced Anheuser to rely on incomplete and spotty evidence" at trial. 69 F.3d 337, 354 (9th Cir. 1995).

/ / /

In *Akiona*, the Ninth Circuit discussed the twin rationales for permitting the trier of fact to draw an adverse inference from the destruction of evidence relevant to a case. The evidentiary rationale for the adverse inference is based on "the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Akiona*, 938 F.2d at 161 (quoting *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988)). There is also a deterrence rationale for permitting the trier of fact to draw an adverse inference from the destruction of evidence–namely, an adverse inference instruction punishes a party for wrongdoing and is intended to deter others from destroying relevant evidence. However, "[a] party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Id*.

The Ninth Circuit has held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation) (citing *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720 (9th Cir. 2005) (same).

**II.     Analysis**

A party has a duty to preserve evidence when it knows or reasonably should know that evidence is potentially relevant to litigation, and sanctions are available when the destruction of that evidence prejudices the opposing party. In this case, it is undisputed that Defendant was on notice of Plaintiff's civil rights claims no later than August 21, 2008, when Plaintiff's counsel mailed a courtesy copy of the Complaint to Sheriff Gillispie and LVMPD's general counsel. The letter requested that LVMPD preserve evidence related to this matter, including electronic evidence such as emails, computerized records, and other computer files. It did not specifically request preservation of video footage of the booking and processing area.

1    Plaintiff did not serve a formal written discovery request for surveillance video until July 28,
2  2009. Request for Production No. 12 asked for "any surveillance video in your possession, custody or
3  control taped on the day of Plaintiff's arrest that depicts the Plaintiff and any one of the Defendants."
4  Plaintiff does not dispute that counsel for LVMPD served a timely response after receiving a brief
5  extension of time to respond to these requests on September 9, 2009. LVMPD responded to Request
6  No. 12, stating:

> Per LVMPD policy and procedure, the tapes are only kept for one year unless special circumstances exist. See LVMPD's Standard Operating Procedure 09.17.00 Control Center attached hereto as Exhibit "6."

9    During oral argument on the instant motion, counsel for Plaintiff stated that his client knew
10 there were cameras in the booking area at the time she was processed and booked. She observed the
11 cameras and believed that they would substantiate her claims that CCDC's personnel realized she was
12 not the Jessica Gonzalez named in the warrant when they booked her. Plaintiff claims she is prejudiced
13 by the destruction of the video tape because it may have shown facial expressions and gestures to
14 substantiate her claims, even if it did not contain audio. Additionally, Plaintiff is prejudiced by the
15 destruction of the video because LVMPD did not identify CCDC personnel who booked Plaintiff, and
16 Plaintiff was deprived of the opportunity to depose them. Instead, LVMPD merely disclosed a long list
17 of individuals on duty in the jail on the date of Plaintiff's arrest.

18    Counsel for Defendant responded that LVMPD was not on notice that the video was potentially
19 relevant to any of the Plaintiff's claims. Plaintiff has never claimed that she was physically mishandled
20 or abused. Because CCDC surveillance cameras are intended to monitor ingress and egress for security
21 purposes and do not record the actual booking process, LVMPD did not believe the video footage was
22 potentially relevant to Plaintiff's claims she was unlawfully arrested and detained. Additionally,
23 Defendant preserved and produced all relevant documents in its initial disclosures. Counsel for
24 Defendant disputed that Defendant failed to identify the individuals who booked and processed
25 Plaintiff. Defense counsel provided the court and opposing counsel with a copy of LVMPD's Answers
26 to Interrogatories, which it served on Plaintiff's counsel on September 21, 2009. Answer to
27 Interrogatory No. 11 asked for "the identification of each individual CCDC officers [sic] that came in
28 contact with the Plaintiff on the day of her detainment." LVMPD objected that the request was overly

broad and that it did not know the identity of each of the individual CCDC officers who came into contact with Plaintiff. Notwithstanding its objections, however, Defendant provided the names of the three officers who were involved with the Plaintiff during the booking process based on Defendant's review of its booking and processing documents. Furthermore, Plaintiff's counsel had the opportunity to ask Lieutenant Gary Driscoll, Defendant's Rule 30(b)(6) designee on CCDC's booking and admission procedures, questions about the video surveillance system in place at CCDC at the time of Plaintiff's arrest. Plaintiff's counsel made no inquiries about video surveillance. Additionally, in his declaration supporting Defendant's Opposition, Lieutenant Hamilton averred that the primary purpose of the cameras in the booking area is to capture the points of ingress and egress so that corrections officers are aware when arrestees arrive and leave. Hamilton Declaration at ¶5. The CCDC cameras are not intended to capture the booking process or the P.I.D. stations because commissioned officers accompany arrestees through each stage of the booking process. *Id*. Thus, the surveillance cameras are not necessary to maintain institutional safety and control. *Id.* Additionally, the poor quality of the VHS recordings would make it difficult to identify individual officers, including those with whom he worked on a daily basis. *Id*. at ¶10.

Plaintiff does not dispute that Defendant had a written standard operating policy and procedure to keep the surveillance tapes in place at CCDC for one year. Rather, she claims that Defendant had a duty to preserve the tapes, and its own policy required preserving tapes where special circumstances exist, and this lawsuit is such a special circumstance. The court agrees that Defendant was on sufficient notice and had a duty to preserve all evidence pertaining to the Plaintiff's booking and processing on the date of her arrest and detention. Although Plaintiff did not claim that she was physically abused, mishandled, or subjected to excessive force, any available video evidence should have been preserved.

However, the court finds that the failure to preserve the surveillance tapes does not warrant spoliation sanctions. Plaintiff claims she was prejudiced because she did not know the names of the individuals with whom she had contact during the booking process. As a result, she was unable to conduct discovery to support her claim that CCDC personnel knew she was the wrong Jessica Gonzalez. However, Defendant identified the three individuals who processed Plaintiff in its answers

///

to interrogatories served September 21, 2009.  Thus, Plaintiff could have deposed the three corrections personnel Defendant identified.

Plaintiff also claims that the failure to preserve the videotape destroyed possible evidence of facial expressions and gestures of the personnel involved in her booking and processing and that this evidence may have substantiated her claims that the officers detained her despite their knowledge that she was not the same person named in the warrant.  Plaintiff claims CCDC corrections personnel knew this when the P.I.D. indicated she was not the same Jessica Gonzalez identified in the warrant. LVMPD *concedes* the P.I.D. indicated Plaintiff was not a match for the Jessica Gonzalez named in the warrant.  Because Defendant concedes this point, the evidentiary value of any observable facial expressions and gestures of CCDC personnel is marginal, at best.

The parties dispute what the P.I.D. is used for, how reliable its results are, and what duty is triggered when it indicates an arrestee is not a match for the person named in a warrant.  These are disputes for the jury to resolve.  Plaintiff contends she should have been immediately released when the P.I.D. showed she was not a match for the Jessica Gonzalez in the warrant.  LVMPD contends the P.I.D. is only used as a preliminary identification tool, and it is only useful to identify arrestees who have been previously arrested and detained in CCDC.  Live-scanning fingerprinting and comparison is the preferred method to verify the identities of persons arrested and detained at CCDC.  Plaintiff disagrees and argues the P.I.D. must be reliable, or it would not be used, and in any event, it is sufficiently reliable to require the immediate release of an arrestee whose prints do not match those in the P.I.D. database.  Because LVMPD concedes the P.I.D.'s preliminary identification indicated Plaintiff was not the same Jessica Gonzalez named in the warrant, the court finds spoliation sanctions are not appropriate.  Destruction of the video, which contained no audio, did not damage Plaintiff's ability to bring this action, does not impair her ability to go to trial, and does not threaten to interfere with the rightful decision of the case.

For the reasons stated,

///

///

///

1 **IT IS ORDERED** Plaintiff's Motion for a Rebuttable Presumption that the Video Surveillance of the Plaintiff's Booking into CCDC was Adverse to the Defendant, or, in the Alternative, for a Permissive Adverse Inference of the Same (Dkt. #71) is **DENIED**.

Dated this 2nd day of April, 2012.

_____
Peggy A. Leen
United States Magistrate Judge